UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-cv-00187-LLK

LAKETA J. WOOD                                                                                                              PLAINTIFF

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security                                        DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.  The fact and law summaries of Plaintiff and the Commissioner are at Doc. 18 and Doc. 24.  The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals.  [Doc. 14].

Plaintiff makes two arguments:  1) The Administrative Law Judge (ALJ) erred in not recognizing that she suffers from severe non-ischemic cardiomyopathy; and 2) The ALJ's mental residual functional capacity (RFC) findings are not supported by substantial evidence.  [Doc. 18].  Because Plaintiff's first argument is persuasive, this Opinion will REMAND this matter to the Commissioner for a new decision.

**The ALJ's decision**

The ALJ denied Plaintiff's disability claim, finding that she has not been under a disability, as defined in the Social Security Act, from October 7, 2016, when she applied for benefits, through December 13, 2019, when the ALJ issued his decision.  [Doc. 13 at 33-34].

In concluding that Plaintiff is not disabled, the ALJ followed the 5-step sequential evaluation process, which applies in all Social Security disability cases.  First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her October 7, 2016 application date. [Doc. 13 at 24]. Second, the ALJ found that Plaintiff suffers from the following severe, or vocationally significant, impairments:

1

vascular insult to brain, depression, epilepsy, neurocognitive disorder, and cervical degenerative disc disease. *Id.* at 24. Third, the ALJ found that Plaintiff's impairments do not satisfy the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.* at 25.

As in any case that advances beyond Step 3, the ALJ determined Plaintiff residual functional capacity (RFC). The ALJ found that Plaintiff, notwithstanding her vascular insult to brain, epilepsy, and cervical degenerative disc disease, can perform "light work as defined in 20 CFR 416.967(b) except ... never climb ladders, ropes or scaffolds, avoid concentrated exposure to work around hazardous machinery, moving parts and work at unprotected heights." [Doc. 13 at 26]. The ALJ found that Plaintiff's depression and neurocognitive disorder limit her to "simple, routine, repetitive tasks and simple, work related decisions," but she can still "interact appropriately with supervisors and co-workers, no more than occasional interaction with the general public, can adapt to occasional change in the workplace and can maintain concentration, persistence, pace for such tasks with normal breaks spread throughout the day." *Id.*

Fourth, the ALJ found that Plaintiff has no past relevant work. [Doc. 13 at 32]. Fifth, the ALJ found that Plaintiff retains the ability to perform a significant number of unskilled, light jobs in the national economy such as light cleaner / housekeeper, marker, and routing clerk. *Id.* at 33.

### Plaintiff's non-ischemic cardiomyopathy

In her October 2016 application for benefits, Plaintiff identified two impairments that limit her ability to work: seizures and head injury from seizures. [Doc. 13 at 243]. She did not indicate that she suffers from a cardiac impairment. *Id.*

In April 2019, Plaintiff suffered an epileptic seizure and/or heart attack, which required hospitalization. [Doc. 13 at 45]. Treatment notes state that the seizure's "etiology is presumed to be secondary to medical noncompliance [not taking Keppra, an anti-seizure medication] + component of withdrawal." *Id.* at 1323, 1327. Additionally, Plaintiff was diagnosed (for the first time) with a cardiac

impairment, specifically: 1) Non-ST elevation myocardial infarction (NSTEMI), with no obstructive coronary artery disease (CAD); and 2) Non-ischemic cardiomyopathy, with an ejection fraction (EF) of 10%. *Id.* at 1322, 1385. Treatment notes state that the NSTEMI was "likely ETOH [ethanol]/drug related." *Id.* at 1327.

At the November 2019 administrative hearing, in her opening statement, Plaintiff's counsel discussed Plaintiff's non-ischemic cardiomyopathy diagnosis and related findings in some detail, which indicated that Plaintiff found her cardiac impairment to be important to her disability claim. [Doc. 13 at 44-45]. The ALJ asked counsel if the cardiac (as opposed to the seizure) impairment was "alcohol or drug related," and counsel responded, "I don't think so." *Id.* at 45. Plaintiff testified that "I didn't really even know I had the heart problem until April [2019], you know." *Id.* at 56. The ALJ asked Plaintiff if she continues to experience cardiac issues after the April 2019 "incident" resulting in hospitalization, and she indicated that she does and hopefully will know more after her cardiology appointment in December 2019. *Id.* at 50. The ALJ asked Plaintiff if she has any "energy level" issues, and she responded that she is typically up (sitting, standing, walking) about half the day and lying down the other half. *Id.* at 56. The vocational expert (VE) testified that Plaintiff would be unemployable if, due to any medical condition, she would require two or more unscheduled breaks during the workday and/or three or more work absences per month. *Id.* at 57.

The ALJ's December 13, 2019 decision mentions in passing that, at about the time of her release from the hospital in April 2019, Plaintiff was "assessed with non-ST elevation myocardial infarction [NSTEMI]." [Doc. 13 at 30]. The Commissioner acknowledges that "the ALJ did not discuss Plaintiff's [non-ischemic] cardiomyopathy [with ejection fraction (EF) of 10%] in the decision." [Doc. 24 at PageID.1586].

Non-Ischemic cardiomyopathy is a generic term which includes all causes of decreased heart function other than those caused by heart attacks or blockages in the arteries of the heart. https://www.urmc.rochester.edu/highland/departments-centers/cardiology/conditions/non-

3

ischemic.aspx. Normal heart function, or ejection fraction (EF), is 55-65%. *Id.* This means that, with each beat, the heart pumps 55-65% of the blood inside the heart to the rest of the body. *Id.* Cardiomyopathy implies some decrease in EF to less than 50%, which is considered borderline or low normal. *Id.* Symptoms include shortness of breath, edema or swelling, fatigue, especially with exertion, unexplained weight gain, and shortness of breath when lying down. *Id.*

**The ALJ erred in not recognizing that Plaintiff suffers from severe non-ischemic cardiomyopathy.**

The ALJ was required, at Step 2 of the sequential evaluation process, to identify Plaintiff's severe, or vocationally significant, impairments. 20 C.F.R. § 416.920(a)(4)(ii). Step 2 is a "de minimis hurdle," intended only to "screen out totally groundless claims." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576–77 (6th Cir. 2009). Thus, if Plaintiff's non-ischemic cardiomyopathy had "more than a minimal effect" on her ability to do basic work activities, the ALJ was required to treat it as "severe" and consider its impact on her ability to work, at subsequent steps of the evaluation process. *Id.* Associated with Step 2 is the requirement that the severe impairment satisfy the so-called duration requirement, i.e., it "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

As noted above, an ejection fraction (EF) below 50% is considered borderline or low normal, and Plaintiff's EF was 10%. [Doc. 13 at 1322, 1385]. Low-EF, non-ischemic cardiomyopathy is associated with shortness of breath, edema or swelling, fatigue, especially with exertion, unexplained weight gain, and/or shortness of breath when lying down, and Plaintiff testified that she has "energy level" issues that require that she lie down half the day. *Id.* at 56. Therefore, due to the nature of Plaintiff's impairment and symptoms, this Opinion concludes that Plaintiff satisfied her de minimis burden of showing that her cardiac impairment satisfies the duration requirement.

The ALJ found that Plaintiff retains the ability to perform light work. [Doc. 13 at 26]. Light work requires significant exertional abilities, including standing/walking 6 hours per 8-hour workday (with

sitting during the remaining 2 hours), lifting up to 20 pounds at a time, and frequent lifting/carrying of objects weighing up to 10 pounds. Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5. Because Plaintiff's non-ischemic cardiomyopathy can be expected to have more than a minimal effect on her ability to do basic work activities and particularly the exertional demands of light work, the ALJ erred in not recognizing that Plaintiff suffers from severe non-ischemic cardiomyopathy. For the reasons below, that error was not harmless.

Not labeling an impairment as "severe" at Step 2 is considered harmless error if the ALJ's decision reflects consideration, at subsequent steps, of the combined effects of all severe and non-severe impairments on ability to work. *Jamison v. Comm'r*, No. 1:07CV152, 2008 WL 2795740, at *8 (S.D. Ohio July 18, 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). In this case, the ALJ's decision did not mention Plaintiff's non-ischemic cardiomyopathy – much less evaluate its effects on her ability to work. As in *Jamison*, the harmless-error rule of "*Maziarz* is distinguishable ... because it is not clear that the ALJ considered plaintiff's cardiac impairment at the other steps of the sequential evaluation process." *Jamison*, 2008 WL 2795740, at *9 (S.D. Ohio July 18, 2008).

**The ALJ's mental RFC findings are supported by substantial evidence.**

Plaintiff has a history of alcoholism. [Doc. 13 at 612]. In 2016, she fell and hit her head, and this resulted in a severe hematoma and a seizure disorder, which required brain surgery. *Id.* The ALJ recognized that Plaintiff suffers from severe, or vocationally significant, vascular insult to brain, epilepsy, and neurocognitive disorder. *Id.* at 24.

In March 2017, Plaintiff was examined at the request of the Commissioner by certified psychologist Ollie C. Dennis, Ed.D. [Doc. 13 at 606]. Dr. Dennis diagnosed mild vascular neurocognitive disorder, bipolar disorder, and moderate to severe alcohol use disorder. *Id.* at 615. Dr. Dennis opined that Plaintiff has "moderate" limitation in her abilities to "sustain attention to perform repetitive tasks"

5

and "relate to co-workers and to accept supervision." *Id.* at 614.  The ALJ gave Dr. Dennis's opinions "great weight." *Id.* at 31.

Plaintiff argues that the ALJ erred in purporting to give Dr. Dennis's opinions "great weight" but not acknowledging the "moderate" limitations Dr. Dennis opined.  [Doc. 18 at PageID.1560-61]. Specifically, Plaintiff alleges that Dr. Dennis's opinions are inconsistent with the ALJ's RFC finding that she can perform repetitive "tasks with normal breaks spread throughout the day" and can "interact appropriately with supervisors and co-workers."  [Doc. 13 at 26].  Plaintiff cites and this Opinion finds no authority for Plaintiff's suggestion that the ALJ was required to translate the moderate limitation in ability to sustain attention to perform repetitive tasks opined by Dr. Dennis into an RFC finding that she requires unscheduled work breaks.  On the contrary, the ALJ limited Plaintiff to simple, unskilled work. *Id.* at 26, 33.  "[S]imple, unskilled work is [not] per se insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r*, 636 F. App'x 625, 635 (6th Cir. 2016).  Nor is there any authority for Plaintiff's suggestion that her moderate limitation in ability to relate to co-workers and accept supervision means than she **cannot** interact appropriately with supervisors and co-workers.

## Order

Because the Administrative Law Judge (ALJ) erred in not recognizing that Plaintiff suffers from severe non-ischemic cardiomyopathy and the ALJ's decision is not supported by substantial evidence, the Court hereby REMANDS this matter to the Commissioner for a new decision and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

March 9, 2022

Lanny King, Magistrate Judge
United States District Court